We have four cases for argument this morning, and we will begin with case number 25-1028, Rodney Fath v. Central Transport. Mr. Wolfman, take a moment to get situated whenever you are ready. Thank you, Your Honor, and may it please the Court. Brian Wolfman for Appellant Rodney Fath. I'd like to reserve three minutes for rebuttal if I may. In CREA Section 9125, Pennsylvania determined that employers may not refuse to hire former offenders based on their convictions unless the convictions are job-related. The statute is straightforward. Take a minute to run through it. A conviction... You think that it's straightforward, counsel. I found it to be, frankly, not a particularly well-drafted statute, but that may just have been my individual reaction to it. But one thing that I wanted to see if you could help me on is that the term, or term of art as the case may be, criminal history record information file, is not defined in the statute. It doesn't appear in the definitions section, notwithstanding a statutory definition of criminal history record information. So what should that tell us, if anything? You know, I think it says very little. The word file appears twice in the entire statute as a noun, and you're correct, Judge Smith, there is no definition for it. So I think it's a descriptive term in 9125 to indicate that that may be where criminal history record information is contained at any criminal justice agency like the Pennsylvania State Police or in a court or some other criminal justice agency. So it's just descriptive of a place that this information may be held. But what 9125B, which is the statute that we're claiming here was violated, uses the term information. And I think that's a reference to criminal justice history information. And a conviction, central transport does not contest this, is a part of criminal history record information defined by the statute. So information should be the focus for us? I think that's right. Not the sole focus, if I might. The statute does train on the word information, and the question is whether that information is a part of criminal history record information. And a conviction is, and central transport does not deny that. All right. I see that in the body. I also see that the title refers to use of records for employment, and records might connote something written. What do we do about the title focusing on something different from the body of the text, which is about information? Well, that's correct. The title, though, of B, which is I think the focus here, is use of the information. And I don't think there's any doubt, based on our pleadings, that the information was used by the employer. The employer was in receipt of the information, and we plead that the sole reason given by the employer for not hiring was that information, the conviction. Okay. Well, do we have a mens rea problem here? If we focus on information, that information, the employer's liable only if the information is part of the file. But if the employer never sees the file or sees documents or records, how is the employer going to know that it is part? Are we going to have to read in some kind of knowing or knowledge or recklessness requirement or something to avoid kind of inadvertent convictions here? No, I think not. If the the the employer here had knowledge that there was a conviction. And how did he know that it was part of the file? Because, oh, that's a good question. And I think that's a matter of law. In other words, I don't think that's a factual question, Your Honor. I think the statute defines criminal history record information. And one of the definitions, one of the components of criminal history record information under 9102 is a conviction. And so as a matter of law, when that information is received by the employer from any source. That employer has. Has violated the statute if and only if the employer has not hired someone and the conviction is not job related. And we allege that that is true here and that would be the subject of a trial if the case is remanded. So anyway, I've taken you through, I think, the statute. And I really just have one more thing to say. We go through the statute. We see that the person is in possession of something that is a part of criminal history record information. And with that in mind, it's easy to see where the district court went wrong. It excised from the statutes, perhaps inadvertently, the words information, which is a part of those five words. And from there, it determined the employer must be in receipt of some file, a criminal history record information file. But that is not what the statute says. The statute requires possession of the information that is a part of that file. And that's what. Excuse me. Don't you also consider the use of the terms a part of a rather odd way of describing something that as you seem to agree or a quantity that you seem to agree. Is information. What do we make of the term a part of? Must it physically be a part of some, again, file, some thing, some paper document or some electronic document? It would seem to be the use of the word file may not be such a problem because it's a word now that we can agree would describe a receptacle of something that in the old days was just paper. Although I'm still in the old days and has such such files or a file that's on a computer. Right. I think it is very likely both Judge Smith. I think this is with respect. I think this is a variant of what Judge Beavis was asking. You know, what what what is information? And I think it could both be a tangible thing or something that is digitized. But I think this goes back to my point that a conviction is a part of the file as a matter of law because of the definition of criminal history record information in 9 1 0 2. And as I say, I think what what happened was, is information which is a part of was was elided in the decision below. And, you know, that's wrong. I think you're correct. I think most of these cases have skipped over this phrase info, which is a part of. I worry, though, that you're skipping over this word file. The statute could easily have said, which is, you know, part of an employment applicant's criminal history record or record information. So what work is file doing? File connotes something physical or in these days, you know, magnetic electronic maybe. And this isn't either of those things. You're you know, you've just made an argument that it is as a matter of law. But it's a weird thing to use this undefined noun to mean something other than the dictionary denotation or connotation of something physical or electronic equivalent. Yeah. I think that that's right. But I think we can give meaning to the word file. Let's assume for a second. Korea is working perfectly and all this information works its way up to the Pennsylvania State Police. And so there is a let's say there is a tangible file. But still, the conviction is information is that is a part of that file. So assuming that file adds something and we don't want to excise any words if we can as a matter of proper statutory construction. So there is this file at the Pennsylvania State Police. But still, the conviction is information which is a part of that file. And, you know, I just want to close with this unless the court has questions. I see Judge Sirica has a question. Thank you. Is an expunged conviction part of the criminal history record information file? Probably probably not. Probably not. I think, you know, the expungement provisions of Korea are complex. But I think at some point when an expungement takes place, can I give an example if I might? So Korea provides that and an arrest, not a conviction, but an arrest. If there isn't a disposition within a certain amount of time, no longer, you know, is is criminal history record information. And I think the same is likely true with with a conviction. In any event, you know, that that doesn't bear on the allegations here. This was a conviction that, you know, has not been expunged. There's no allegation to that effect. I think going back, you know, unless the court has further questions, going back to the concern. Judge Bevis noticed this, too, that some of the decisions in this area have not, you know, done business with five of the words of the statute. And that violates two related cardinal rules of construction that a court must, when possible, give effect to all of the statute's words. And that a court may neither subtract from or add to what the legislature has put on paper. So let's talk about another position you guys haven't addressed, which is C. Did your client, did Mr. Fath, receive the notice in writing? Is the employer in violation of C? Yes, we allege a violation of C. And Central Panport does not does not contest that if this is a good case under B, based on the allegations, it is also a good case under C. Because he alleges that he was not notified in in writing of the adverse employment action. So, you know, for the reasons I've given, this court should reverse and allow Mr. Fath an opportunity to prove his case. I welcome any other questions the court has, but if it has none, I will reserve my time. Thank you. We'll get you back on rebuttal. I think Mr. Cavalier is up next. Take a moment to get settled. Good morning, Judge Bevis, Judge Sirica, and Judge Smith. It pleases the court, I'm John Cavalier with Jackson Lewis on behalf of Central Transport. It's certainly nice to see you all again, and it's always an honor to be back before the Third Circuit. On that note, I'm here today with my colleague, Morgan Hollander, who's making her first appearance before the court today. And so on that note, I've taken selfishly 10 minutes for myself and have reserved five minutes for Miss Hollander to address the public policy arguments that have been made and raised by the other side. Before I begin, though, I do want to take a quick moment just to acknowledge the great work that has been done by Attorney Wolfman students on this matter at Georgetown. Their advocacy on behalf of Mr. Fath has been thoughtful, passionate, vigorous, and it certainly gives us all, I think, a comforting feeling to know that the future of appellate advocacy is in good hands. And I know that Miss Hollander and I and all of the other attorneys in the room are looking forward to welcoming them to the bar as colleagues. So having said that, unfortunately, even the best lawyering in the world can't change the plain words of a statute. The bottom line here is that, at least in our view, the text of the statute as applied to this situation, and as it has been interpreted by every judge who's looked at it but one, it's crystal clear in that respect. Okay. I have a problem with the precedent argument. Courts like Azipur skip over this phrase. All right? They're not quoting it. They're not parsing it. They're not diagramming it. They're not doing anything with it. What work does information, which is a part of due, on your reading? How would the statute mean – how do we – does your reading avoid making that – I mean, does it count against surplusage? Is it superfluous on your reading? So, Your Honor, I think that, as Judge Smith pointed out during Mr. Wolfman's argument, the fact that the words file are used earlier require us to also read file as part of the information record. I mean, if you think about it from the other perspective, I think it sheds light on this. If we are left as employers to simply surmise what information, what part of the information history may or may not be part of a file –  I asked Mr. Wolfman about that. He had a ready response, which is, well, by law, convictions, at least if they haven't been expunged yet, are part of the file. So what do you say about that? So you could imagine a scenario where the employee might be wrong about what the conviction is for, what level of conviction they are under. From our view – All right, that we could take care of that with a negligence mental state or something where, you know, the employer reasonably believes it's not a part of the file. But that doesn't help your client. Your client knew this was a conviction that was represented, that was disclosed by him, and Mr. Fath is getting penalized for that. So if – is Mr. Wolfman wrong that employers can count on these disclosed convictions as being, by law, at least they can treat them as a part of the file? I think the source of the information makes it a part of the file or not. What tells us that the source matters to the file? I think the nature of the statute itself and the words that it uses. I mean, the statute as a whole can be read to, at least in our view, again, pretty clearly speak to information compiled and held by the state. And when read as a whole, I think it's pretty clear that what the statute does is it says if you avail yourself of the information kept in a file by state agencies as an employer, you cannot then turn around and use that answer. That is the way that all but one of the courts have read it. But my problem, the fundamental problem is if the statute – you could just as easily skip over those five words and say whenever an employer is in receipt of an employment applicant's criminal history record information file, it may use that file for purposes of deciding whether or not to hire the information. So whether or not to hire the applicant. Is information which is a part of doing any work on your reading? I think the work that it does is it delineates between requiring the entire file and a piece of the file. I think a natural read of CREA –  So then maybe the part of an is doing work. Whenever an employer is in receipt of part of an information criminal history record file, it may use that part only for the purpose. Yes. But that's still making information which superfluous and turning information both times it shows up into part. How would the statute – is information which superfluous? If it were just an in receipt of part of an employment criminal record file, would that mean anything different? I don't think it would. I think what the statute is trying to say – and to Judge Smith's point, I do think it is, let's generously say, cumbersomely written in that respect. But given the history of the statute, its purpose, and the – I believe what it was trying to address at the time it was passed – What tells us that purpose beyond the words of the statute? We usually glean the purpose from the words of the statute. What tells us otherwise? And so in this case, there is not much legislative history that we can go on. There's not? But this is an older statute, and it dates back to 1979. Is there anything about the enactment history, about a preamble title finding, anything beyond what we have in 9125 that you want to direct me to, to glean the purpose? Not that I see, but I will note that it has been amended in part recently. Post several of these cases that have looked into it and have found that, to your point, have not read any special meaning into the words, information that is part of. In order to address the expungement issue that Judge Sirica raised. Okay, so there's some dealing with expungement. And it has never been changed in any other respect. All right. When we get to the issue Mr. Wolfman was talking about, about convictions, I do note that A is the general rule, and then B says felony and misdemeanor convictions may be considered only to the extent they relate to suitability. So it seems to be assuming that at a minimum, felony and misdemeanor convictions are part of the file, correct? I think it, if I understand your question correctly, I think the statute is saying that if they are received from that source, from the file, then yes, by definition they are a part of the file. A, you want to read, you want to infer that that's implied in A, but then B just says felony and misdemeanor convictions generally, right? Does, is your, is your client in violation of B regardless here because they can be considered only to the extent to which they relate to suitability? So let me address that. Assuming the facts as pled in the complaint are true. Assuming that, which you would be entitled to a trial on, but wouldn't your client be in violation of B? I think if we assume the facts as pled in the complaint are true, and we also assume, again, against the arguments that we're making here that CREA applies, based on the disclosure from Mr. Fath to the employer, and based on the pled facts as to the reason for the appointment. Right, but I'm not talking about A, just B. It would be a violation of B if they prove their facts. If CREA applies. Well, what I'm saying is how could CREA not, B of CREA not apply? Regardless of what you say about A, about the file, B doesn't use this, this language about files. B just says to the extent it's suitable, it's felony and misdemeanor convictions generally. So again, I think given where. Use of information, which. Right, and I do see where you're coming from, and it speaks to dispositions, I believe not convictions, just for clarity. If I'm reading the right section that you're referring to, Judge Bevis. Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment. So there's no reference to files in B. And the subtitle, Mr. Wolfman pointed out, is use of information. Right, and so again, I believe that based on the way the statute is written and where it appears, that section of the statute is speaking, again, to information received. Okay. You think B has to be read as flowing from A. We can't read it. I do. I don't think it stands independently, and again, if it were, and Ms. Hollander will speak to you in a little more detail about this, but if it were the case that there was a general provision applying across the board to any convictions, sort of like a ban the box type of statute, we wouldn't see these municipalities throughout Pennsylvania having to pass these additional statutes. And frankly, I think we would see, given the decisions by lower courts, given the decisions by state courts in the intervening time period, the legislature could have very easily amended or clarified to Judge Smith's point, the statute, that that was, in fact, intended to apply outside of the context of these criminal record information files that the state maintained. It is true, but it's perilous to draw inferences from legislative silence or inaction. I think that's fair. But again, in this particular case, given the history and given the action in the legislative context by the various municipalities, and again, given the intervening change to the statute in part by the legislature, it's not like they ignored it for however long it's been, 40 years. They've actually addressed issues with this statute that courts have raised. Given that fact, it would have been very easily for them to clarify or expand, in our view, the primary purpose of the text, had they chose to do so, had they wanted to do so. So while I agree with you that we need to be careful reading into silence, I think this silence in this particular case does speak rather loudly. So I see my time is up. If there's no further questions, I'll just conclude briefly with this. To the extent that Mr. Fath and his counsel do take issue with the plain language of CREA, those pleas are properly directed to the legislature, not this court. And respectfully, this court should decline that invitation that they are making to engage in the type of judicial activism that it would be required to read the statute to apply to a self-disclosure of a conviction by an applicant to an employer. All right, Mr. Cavalier, now we'll hear from your colleague, Ms. Hollander. Thank you all. May it please the court, Morgan Hollander of Jackson Lewis, also for Central Transport, LLC. Welcome. Thank you. Public policy does not mandate a different interpretation and application of CREA and how it was interpreted and applied by the district court to the facts alleged in Mr. Fath's complaint. But today, Mr. Fath... Is it your position, Ms. Hollander, that your friends on the other side, by emphasizing public policy, really, and when I say emphasizing, the very first sentence on the very first page of their opening brief made reference to Pennsylvania's long-recognized and deeply ingrained public policy of avoiding unarmed and stigmatization of and unreasonable restrictions upon former offenders. And I'm curious about that invocation of public policy here. We know we need to look to the words of a statute, but we also need to keep in mind that we're dealing with a diversity case here that applies the substantive law of the Commonwealth of Pennsylvania. And having been a lifelong president of Pennsylvania and throughout my career having dealt with Pennsylvania law and, in particular, opinions of the Supreme Court of Pennsylvania, I know, as the case cited at the beginning of your friend's brief, Secretary of Revenue v. Johns Vending Corporation, that the Supreme Court of Pennsylvania will look to public policy and certainly consider its force, at least, in its existence. So why should we completely ignore the law and, I would say, salutary public policy that has been enunciated here not only by your adversary but also by the Pennsylvania Supreme Court? I think public policy is what the Pennsylvania legislator says it is. And here, the legislator clearly understood that when enacting CREA as by its terms, employers could legally rely upon an applicant's criminal history outside of the permissive uses under Section 9125 if it obtained information... The legislators may have clearly understood that, but I would venture this, that they didn't give us the clearest statutory guidance they might otherwise have provided. Well, I do think we have to look to Section 9104 as well because Section 9104 that hasn't been talked about today is excluding various sources of information from CREA's protections. And including Section 9104E that says information collected by non-criminal justice agencies and individuals from the sources identified in this section are not considered criminal history record information. And I don't think they would have enacted that section if they intended for this broad application of criminal history. I also think that it would harm public policy to apply CREA in the way that Mr. Fath and the Amici request because it does create this uncertainty that the public can't rely on laws as they're written. The Supreme Court actually discussed this principle in Bostock versus Clayton County and said, quote, the people are entitled to rely on the law as written without fearing that courts might disregard its plain terms based on some extra textual consideration, end quote. So what work do you think 9104 is doing? I'm trying to understand. Sure. So Section 9102 defines criminal history record information as was discussed as information that was collected by criminal justice agencies concerning individuals and arising from the initiation of a criminal proceeding consisting of identifiable descriptions, dates, and notations of arrests, indictments, informations, or other formal criminal charges and any dispositions arising thereof. 9104, the first part, generally says that nothing in this chapter is to be construed to apply to and then lists a variety of sources of information, all of which are matters of public record, press releases, police blotters. And then Section 9104E says that information, I'm going to get the exact quote, collected by non-criminal justice agencies and individuals from the sources identified in this section shall not be considered criminal history record information. Correct. And arguably, Mr. Fath is an individual from which information was collected about a criminal history. He's not a criminal justice agency. So if you read 9104E into the statute because the entire statute needs to be read as a whole, you would see that this information from this source is not considered criminal history record information. And as Mr. Cavalier argued, you need to read A of Section 9125 to get to B. You have to be in receipt of criminal history record information file. And you're not in receipt of that file with that information if the information comes from a source that's not a criminal justice agency. And I see my time is up, but I'm happy to address other questions by the court. All right. Hang on. So 9104E applies to sources identified earlier. So what do you think that refers to? How could that be personal statements? So Section A of that includes matters of public record, press releases. And I think that's actually interesting. Information that is part of, and we were talking about that earlier, you could also read it the other way. So if you say information part of a criminal history record information file, so that information that's collected from a criminal justice agency, that same information, i.e. a conviction, would also be information part of a source excluded by Section 9104A. Except 9104A doesn't refer to information. It refers to original records, police blotters, press releases, judicial records, wanted persons, those kinds of things. But Fath's knowledge isn't coming from a Fath wanted poster or from a judicial opinion. It's coming from his firsthand having gone through this. So how is it that he is learning about it from a wanted poster or something? Well, I think you could also say it's not just from a wanted poster, but it's from the original records, his experience in that proceeding. The records. But the records we were talking about, records suggest something like something written, you know, maybe electronic equivalent of it. How is it that he's learning from that? I mean, I think that specific where he's learning it from, his own experience, I think that's hard to read into anything. I think he was there. So of course he knows what happened to him. But I also think information that is part of, if you could just look at it from criminal history record information file, that same information would also be part of a press release. His conviction would be in a press release. His conviction would be in a newspaper article. If you Google his name, his conviction does come up in a newspaper article. So that information that is part of. What's striking to me, though, is 9104 doesn't use the word information and 9125 does use the word information, right? So it's not that the information is included by 9104. It's that, okay, we're not saying that this applies to, like, you know, wanted posters or something like that. But if this is independent of a wanted poster, if he had given the employer a wanted poster, this would be different. But he didn't. Well, 9104E does speak to information. And it says information from sources excluded by this section. So why is it that you think that FAF collected the information about his own conviction from these kinds of the records in 9104A? Well, the part of 904A says that it's disseminated at the same time as a criminal proceeding. So I think you could say, you know, he was at his own criminal proceeding. He got the information from his sentencing when they told him he was convicted. Again, you can't read it directly into it. But I do think it's more akin to that, a source that's not information collected from a criminal justice agency, versus more of a matter of public record. Okay. Do you have any more questions? Yeah, I have. I have one question.  Could any employer avoid the application of CREA merely by asking about the convictions in the job application? I think that's not, CREA is not designed to protect that type of inquiry. I think you're correct. If you wanted to evade CREA's liabilities, you could theoretically ask about a conviction. But if the legislator intended for that to be covered, you could envision this broader law that removes additional employment barriers to facilitate the reentry of felons. But that's not CREA. And as Mr. Cavalier alluded to at the end of his argument, other municipalities have enacted certain laws, like Philadelphia's Ban the Box, for instance, that prevents an employer from asking about an applicant about their criminal history during the interview. Philadelphia wouldn't have enacted that law if CREA already covered the scope and contents of that. Judge Smith, do you have anything else? I do not. Thank you. All right. Thank you very much. Thank you, Ms. Holmes. Thank you. Mr. Wolfman, I think you reserve three minutes for rebuttal, and I hope you will address 9104A and E at some point. Yeah, I can do that now. The A taken together appears to be an effort by the legislature to say that certain information that is already public information, like a police blot or like a wanted poster, is not subject to CREA because this information could be freely disseminated thereafter. It doesn't speak to 9125, which concerns information.  And the information here is the conviction. I want to come back to that at the end. I want to address E. E just doesn't apply on the allegations here because Mr. Fath gave the information to the employer. This was not information collected by a non-criminal justice agency or individual. And if it were, if it were, it would render 9125B meaningless because on their reading of E, convictions would always come within it. So I want to now return to 9125, and I think this goes to, and I hope I'm not being presumptuous, two theories of the case that you, Judge Bibas, I think were expounding. One could view 9125B as just a freestanding prohibition about information that is given to the employer that is a conviction, either a felony or misdemeanor conviction. Simply freestanding prohibition, not tethered to A. But our position is, that's one theory, and I think I heard you, with all respect, Judge Bibas, positing that possibility. The other possibility is that B is tethered to A. Therefore, it is criminal history record information. So on either theory of 9125B, the allegations here survive. And if they're proved, central transport would be liable, and we want an opportunity to prove that. Unless the court has further questions, we'll rest on our briefs. All right. We'd like to thank both sides for their helpful briefing and argument. Special commendation to the law students and team that worked on this.